IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

GARY HORTON,

*Defendant*.

CRIMINAL No. ELH-19-115
(Related Case: ELH-11-547)

**MEMORANDUM OPINION**

This Memorandum Opinion addresses a second motion for compassionate release filed by defendant Gary Horton, through counsel, pursuant to 18 U.S.C. § 3582(c)(1)(A).

In case ELH-19-115, Horton entered a plea of guilty in July 2021 to the offenses of conspiracy to distribute and possess with intent to distribute heroin, cocaine, and marijuana, as well as possession of a firearm by a felon. ECF 301. He also pleaded guilty to a violation of supervised release in what was previously case RDB-11-547 ("VOSR Case").[1] On October 25, 2021, the Court sentenced defendant to a total term of 78 months of imprisonment in Case ELH-19-115, with credit for time served since November 15, 2018. ECF 336 (Judgment). In addition, the Court imposed a consecutive sentence of 90 days in the VOSR Case. Thus, defendant received a total sentence of 81 months of imprisonment.

On November 23, 2022, Horton, through counsel, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF 393 ("First Motion"). It was supported by fourteen exhibits. ECF 393-1 to ECF 393-14. By Memorandum Opinion (ECF 404) and Order (ECF 405) of May 10, 2023, I denied the First Motion. Although I determined that defendant had established

---

[1] Horton was one of twenty-four defendants in RDB-11-547, a RICO case. His VOSR was transferred to me so that it could be resolved simultaneously with case ELH-19-115. Therefore, as to Horton only, it is now case ELH-11-547.

an extraordinary and compelling reason for compassionate release, based on certain health conditions and the COVID-19 pandemic, I concluded that "a balancing of the [18 U.S.C.] § 3553(a) factors readily indicates that defendant's release from prison is not warranted at this time." ECF 404 at 35.

On August 9, 2024, defendant filed another motion for compassionate release.  ECF 420. He incorporates by reference the "arguments and submissions" made in the First Motion, *id.* at 3, and has submitted five exhibits: a copy of the First Motion (ECF 420-1); a copy of my prior Memorandum Opinion (ECF 420-2); Horton's request to the Warden of July 1, 2024, seeking compassionate release (ECF 420-3); and fifteen course completion certificates (ECF 420-4, ECF 420-5).

Horton also filed a supplement to the Second Motion.  ECF 422.  It is accompanied by one exhibit.  ECF 422-1.

I shall refer to ECF 420 and ECF 422 collectively as the Second Motion.  The government opposes the Second Motion.  ECF 428 ("Opposition").

In the Second Motion, defendant contends that he suffers from several mental and physical health conditions that establish an extraordinary and compelling reason for compassionate release. ECF 420 at 3–4.  Although defendant recognizes that "[t]he impact of COVID-19 has been reduced," he maintains that "the need for medical attention continues to be a major factor in [his] life . . . ."  *Id.* at 3.  Therefore, he urges the Court to suspend "the balance of [his] sentence" or, in the alternative, place him "on home confinement."  *Id.* at 1.

Moreover, defendant complains that he was recommended for transfer to a residential reentry center ("RRC") on September 14, 2024, *id.* at 2, but, there "'are no beds available.'"  *Id.* at 6.  As a result, he cannot be transferred.  *Id.*  So, Horton asks the Court to release him.  In this

regard, defendant asks the Court to consider his "outstanding record" while in BOP custody.  *Id.* at 7.

While working on the Second Motion, I recognized that defendant's medical records had not been updated.  Therefore, by Order of November 6, 2024 (ECF 429), the Court asked defense counsel to submit current medical records for Horton.  In December 2024, defendant personally submitted additional medical records.  ECF 430; ECF 430-1.

No hearing is necessary to resolve the Second Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Second Motion.

## I.  Factual and Procedural Background[2]

Horton and six others were indicted on March 12, 2019.  ECF 1.  In particular, defendant was charged with conspiracy to distribute and possess with intent to distribute heroin, cocaine, and marijuana, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute heroin, cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Three); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Eleven); possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Twelve); and maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Count Fifteen).

The case was vigorously litigated.  In particular, the defense filed several suppression motions.  *See* ECF 111, ECF 112, ECF 113, ECF 115, ECF 165.  Following a hearing on July 9, 2021 (ECF 290), I denied the motions.  ECF 292.

Soon after, on July 23, 2021, pursuant to a Plea Agreement (ECF 303), defendant entered a plea of guilty to Counts One and Twelve of the Indictment, and to Violation Number 1 in the

---

[2] To the extent relevant, I incorporate the factual background set forth in my Memorandum Opinion of May 10, 2023.  *See* ECF 404 at 2–7.

VOSR Case.  ECF 301; *see* VOSR Case, ECF 971.  The VOSR charge was based on the same conduct that culminated in defendant's prosecution in the instant case.

The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a total sentence ranging between 60 and 84 months of imprisonment.  ECF 303, ¶ 10.  By statute, Count One in the underlying case carried a mandatory minimum term of five years' imprisonment, with a maximum penalty of forty years of imprisonment.  *Id.* ¶ 4(a).  Count Twelve carried a maximum penalty of ten years of imprisonment.  *Id.*  And, for the VOSR Case, the maximum penalty was two years of imprisonment.  *Id.* ¶ 4(b).

The Plea Agreement contained a lengthy factual stipulation.  It stated, *id*. at 11–12:

> On or about September 17, 2012, the defendant, Gary Horton pled guilty in the United States District Court for the District of Maryland to a RICO conspiracy, in violation of 18 U.S.C. § 1962(d).  He was sentenced on January 2, 2013 to 36 months of imprisonment, to be followed by 5 years of supervised release. Subsequently on June 8, 2016 he was sentenced to an additional 18 months of imprisonment, to be followed by 39 months of supervised release based on a violation of the terms of his supervised release.  The judgment ordered that while he was on supervised release, the defendant was not permitted to commit any federal, state, or local crime.  After serving his sentence of imprisonment, the defendant's supervision commended on or about June 29, 2017 and was not scheduled to expire in the ordinary course until September 7, 2019.

> During the fall in 2018, members of the Baltimore County Police Department, Homeland Security Investigations, and the Drug Enforcement Administration worked in partnership to investigate narcotics trafficking activity occurring in and around Baltimore County and Baltimore City, in the District of Maryland.  On September 21, 2018, the investigators obtained authorization from the Honorable Judge D. Robinson of the Circuit Court of Baltimore County to intercept wire and electronic communications from several cellular phones associated with coconspirators engaged in trafficking suspected heroin and cocaine. Investigators learned that one of the coconspirators, identified as the Defendant, Gary Horton, was involved in the distribution of narcotics to various other conspirators throughout October and November of 2018.  As part of their investigation, investigators conducted court-authorized wiretaps of two of the Defendant's cell phones.  Intercepted calls show that the Defendant discussed buying suspected kilogram quantities of heroin with another coconspirator, and during several of these calls, the Defendant would report back to the coconspirator about the quality of the product he had purchased.  In addition, coconspirators were

observed going to and from the Defendant's residence, located at 103 W. Conway Street.

On November 15, 2018, several search and seizure warrants were executed at locations linked to members of the conspiracy, including 103 W. Conway Street, the Defendant's residence. Inside of 103 W. Conway Street, investigators recovered approximately 1,677 grams of cocaine, approximately 31 grams of heroin, and approximately 2,321 grams of Marijuana. Investigators also found bags with green chunks of an unknown substance, vials of suspected THC oil, and HOH (human growth hormone). They also found cutting agents, including Inosital, Mannitol, and Quinine, as well as a money counter and a kilogram press. Finally, investigators found a Bushmaster XMl5e2S AR-15 rifle, [a] .357 caliber Smith and Wesson revolver, a Taurus 9mm semi- automatic pistol, a .40 caliber Glock semi-automatic pistol, and a 9mm Glock semi-automatic pistol.

Several other search and seizure warrants were executed in parallel with the search described above. Additional quantities of suspected cocaine, heroin, and other narcotics were also recovered at addresses associated with other coconspirators.

The parties stipulate and agree that the drugs recovered from the Defendant's residence were in fact cocaine, heroin, and marijuana, and that they were intended for distribution. The parties stipulate and agree that the amount of narcotics reasonably foreseeable to the Defendant, Gary Horton, as part of the overall conspiracy was between 100 kilograms and 400 kilograms of Converted Drug Weight, and that the cocaine, heroin, and marijuana were intended for distribution.

The parties stipulate and agree that at the time of the possession of the firearms, the Defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, that he knew he had been convicted of the prohibiting crime, and that his civil rights related to the possession of a firearms had not been restored.

The parties further stipulate that the recovered firearms were in or affecting interstate commerce because they had been manufactured outside the State of Maryland, and that all the firearms meet the definition of a firearm pursuant to 18 U.S.C. § 921.

In the Plea Agreement, Counts One and Twelve were grouped for purposes of calculating

defendant's sentencing guidelines range under the U.S. Sentencing Guidelines ("Guidelines" or

"U.S.S.G."). *Id.* ¶ 7(c). The parties agreed to a base offense level of 24 for both counts. *Id.*

¶¶ 7(a), 7(b). As to Count One, the offense level was based on the drug quantity, pursuant to

§ 2D1.1(c)(5) of the Guidelines. *Id.* ¶ 7(a). Also as to Count One, the parties agreed to a two-level increase under U.S.S.G. § 2D1.1(b)(1), because defendant possessed a firearm during the commission of the offense. *Id.* With respect to Count Twelve, the offense level was 24 under U.S.S.G. § 2K2.1(a)(2), because defendant had two prior felony controlled substance offenses. *Id.* ¶ 7(b). And, it was increased by two levels under § 2K2.1(b)(1)(A) "because between 3 and 7 firearms were possessed." *Id.* As a result, the Plea Agreement contemplated a final offense level of 26, before deductions for acceptance of responsibility. *Id.* ¶ 7(c).

There was no agreement as to defendant's criminal history. *Id.* ¶ 8. However, the Plea Agreement notes that defendant had a Criminal History Category of VI at the time of his prior federal offense. *Id.* ¶ 7(d).

Sentencing was held on October 25, 2021. ECF 332. The calculations in the Amended Presentence Report (ECF 335, "PSR") reflected a two-point deduction for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1. *Id.* ¶ 26. However, the government declined to move for the additional one-point deduction under § 3E1.1(b). *See* ECF 337 (Statement of Reasons), at 1; ECF 386 (Sentencing Transcript) at 3.[3] Accordingly, as to Counts One and Twelve, the PSR reflected a final offense level of 24. ECF 335, ¶ 27.

According to the PSR, Horton's criminal history dates to age sixteen. *Id.* ¶ 29. He also had five adult criminal convictions, including a federal offense. *Id.* ¶¶ 32–36. In the prior federal case, Horton twice violated the terms of his supervised release. *See* VOSR Case, ECF 865, ECF 866, ECF 1022, ECF 1023.

---

[3] The government has the discretion to move for a one-point deduction under U.S.S.G. § 3E1.1(b). The government sometimes declines to do so for a defendant who litigates pretrial motions. Here, Horton litigated several pretrial motions. *See* ECF 290; ECF 292.

In particular, in 2001 defendant was convicted in Baltimore County of possession-not marijuana, for which he received a two-year suspended sentence and 18 months of unsupervised probation. ECF 335, ¶ 32. In 2004, in the Circuit Court for Baltimore County, defendant was convicted of possession with intent to distribute narcotics. *Id.* ¶ 33. And, in 2005, in the Circuit Court for Harford County, Horton was convicted of the same offense. *Id.* ¶ 34. Defendant received a suspended three-year sentence for the 2004 offense, but violated his probation and received the three-year sentence. *Id.* ¶ 33. As to the 2005 offense, Horton received a 15-year sentence, of which ten years were suspended. *Id.* ¶ 34. While incarcerated, defendant stabbed another inmate and was convicted of second-degree assault, for which he was sentenced to a consecutive term of imprisonment of two years. *Id.* ¶ 35.

Notably, in 2013, Horton was convicted in federal court of conspiracy to participate in a racketeering enterprise. *Id.* ¶ 36. The case was assigned to Judge Richard Bennett. He imposed a three-year sentence and five years of supervised release. *Id.* In 2016, Horton violated his supervised release, for which Judge Bennett imposed an 18-month sentence. *Id.*; *see also* VOSR Case, ECF 865, ECF 866.

Horton's criminal convictions yielded a criminal history score of twelve points. ECF 335, ¶ 37. Two points were added because, at the time the instant offenses were committed, Horton was on supervised release. *Id.* ¶ 38.[4] Thus, Horton had a total criminal history score of 14 points, yielding a criminal history category of VI. *Id.* ¶ 39.

---

[4] If defendant were convicted today, only one additional point would be added. *See* U.S.S.G. § 4A1.1(e); *see also* Amendment 821, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821. Even with the addition of only one point, defendant's criminal history category would have been VI.

As to Counts One and Twelve, with a final offense level of 24 and a criminal history category of VI, the Guidelines called for a period of incarceration ranging from 100 months to 125 months. *Id.* ¶ 76; ECF 337 at 1. As noted, in the Plea Agreement the parties agreed to a total sentence ranging between 60 and 84 months of imprisonment. ECF 303, ¶ 10. Defendant faced additional incarceration based on the VOSR Case.

Defendant was 36 years of age at the time of sentencing. ECF 386 at 30. In accordance with the terms of the C Plea, the Court imposed a sentence of 78 months of imprisonment for the underlying case, with credit for time served from November 15, 2018, to April 12, 2021. ECF 336.[5] That sentence was well below the bottom of the advisory Guidelines range. And, as to the VOSR Case, the Court imposed an additional sentence of only three months, consecutive, for a total sentence of 81 months of imprisonment. *Id.* The combined sentence was below the top end of the C-plea range for the 2019 case. No appeal was filed.

Defendant is now 39 years of age. *See* ECF 335 at 3. He is presently incarcerated at FCI Fairton. https://www.bop.gov/inmateloc/ (search by BOP Register Number 54218-037) (last accessed December 31, 2024). Horton has served about 60 months of his 81-month sentence, or

---

[5] Defendant was in State custody from November 15, 2018, to March 21, 2019. ECF 336. He was transferred to federal custody on March 21, 2019, *id.*, and was held in pretrial detention. ECF 44; ECF 179; ECF 225. In March 2021, defendant filed a motion for reconsideration of the Court's detention order. ECF 236 (corrected motion). I granted that motion and placed defendant on pretrial release. ECF 265 (Amended Order of 4/8/21, setting conditions of temporary release); *see also* ECF 270 (Order of 6/3/21, modifying conditions of release). Horton was released on April 12, 2021. *See* ECF 336. On October 25, 2021, defendant was sentenced, and the Court imposed a self-surrender date of January 25, 2022. *Id.* Subsequently, on the basis of several medical conditions from which Horton was suffering, in addition to concerns regarding COVID-19, defendant filed five motions for extensions of time to surrender. ECF 359, ECF 367, ECF 375, ECF 379, ECF 382. The Court granted defendant's first three requests. ECF 360 (Order of 1/4/22); ECF 370 (Order of 2/23/22); ECF 378 (Order of 3/25/22). However, by Order of April 21, 2022 (ECF 380), the Court denied defendant's fourth extension request (ECF 379). In light of a then impending scheduled medical appointment, however, the Court granted defendant's fifth extension request, until May 10, 2022. ECF 383.

approximately 74 percent.  *See* ECF 336 (defendant received credit for time served from November 15, 2018, to April 12, 2021); ECF 383 (defendant self-surrendered on May 10, 2022).  He has a projected release date of September 14, 2025.  https://www.bop.gov/inmateloc/.

## II.  Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  It is commonly termed the "'compassionate release exception.'"  *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . .").  Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. In other words, a federal inmate is now able to file a motion for compassionate release directly

with the court, as long as the inmate first exhausts administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied.  *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.  Specifically, "the district court must conduct a two-step analysis."  *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts.  The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step.  Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable."  *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis."  *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended.  *See Davis*, 99 F.4th at 654

(citing 88 Fed. Reg. 28254 (May 3, 2023)).  The Policy Statement now begins: "Upon motion of

the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the

court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).

Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A).

*Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments

in light of the Sentencing Commission's new policy statement outlining when and how to consider

changes in law as an extraordinary and compelling reason for a reduction").  As a result, when a

defendant files a motion for compassionate release, a court must ensure that any sentence reduction

"is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING

REASONS."  It identifies multiple circumstances that, individually or in combination, may provide

"extraordinary and compelling reasons" for a reduction in sentence.  *See* § 1B1.13(b)(1)–(6).

These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment

to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[6]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court

_____

[6] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may

be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III.  Discussion[7]

### A.

Defendant was born in February 1985.  *See* ECF 430-1 at 1.  He is now almost 40 years of age.

Horton submitted a request for compassionate release to the Warden on July 1, 2024.  ECF 420-3.  He claims that the Warden did not respond.  ECF 420 at 2.  The government does not dispute that defendant has exhausted his administrative remedies.  ECF 428 at 6 n.4 (citing ECF 420-3).  Accordingly, I am satisfied that defendant has established administrative exhaustion.  *See* 18 U.S.C. § 3582(c)(1)(A); *cf. Muhammad*, 16 F.4th at 129–30 (stating that, because the administrative exhaustion requirement is non-jurisdictional, it can be waived if not timely raised by the government).

In the Second Motion, defendant adopts the submissions concerning his medical conditions that he presented in the First Motion.  ECF 420 at 3 (incorporating by reference in the Second Motion the arguments made in the First Motion).  In the First Motion, Horton argued, *inter alia*, that he suffers from anxiety disorder, adjustment disorder, and post-traumatic stress disorder ("PTSD").  ECF 393 at 4–5; *see also* ECF 393-2 (March 29, 2022, "Progress Note" signed by clinician which states that defendant was diagnosed with these conditions).  Defendant also suffered from morbid obesity, seizures, and Vitamin D deficiency, and he had a large lump growing on his neck, which did not respond to antibiotics.  ECF 393 at 6–7; *see also* ECF 393-11 at 1–3 (May 3, 2022, MedStar Medical Group "Final Report" referencing these conditions); ECF 335, ¶ 60 (PSR referencing that defendant reported that he had a seizure while in custody, for

---

[7] To the extent relevant, I incorporate from ECF 404 my discussion of COVID-19.  *See id.* at 16–28.

which he was eventually transported to Mercy Hospital). And, as noted, the Court determined that defendant satisfied "the 'extraordinary and compelling' prong of the § 3582 analysis . . . ." ECF 404 at 35.

In addition, Horton now complains, *inter alia*, that personnel at FCI Fairton "recommended and requested" his transfer to a RRC, ECF 420 at 6, but that transfer did not occur because there were "'no beds available.'" *Id.* at 7; *see* 18 U.S.C. § 3624(c)(1). Defendant has not provided any documentation establishing that he was deemed eligible for placement at a RRC, or that he was not released due to a lack of bed space. Nevertheless, Horton asserts, *id.*: "[T]he failure to place an inmate at [a RRC] when properly recommended by the [BOP] is a factor to be considered in the granting of relief under 18 U.S.C. § 3582(c)(1)(A)." Further, he states, *id.* at 8: "Gary Horton is not asking that his sentence be reduced; only that he be accorded that of which the BOP believes is appropriate, i.e. residential reentry center. With no beds available at the RRC, the next best thing would be a release on home confinement with electronic monitoring."[8] Horton asks, alternatively, "that the balance of [his] sentence be suspended." *Id.* at 1.

The government observes that defendant relies on medical records from the First Motion, filed in November 2022, and "does not provide any updated medical records for the Court's consideration." ECF 428 at 6. Without this "additional information to support his purported medical conditions," argues the government, defendant "cannot satisfy his burden to show that he meets the 'extraordinary and compelling' criteria for compassionate release." *Id.*[9]

---

[8] Horton has not advised the Court where he would reside if he were to be placed on home confinement. *See United States v. Edwards*, No. CR 03-234, 2022 WL 2866703, at *6 (D.D.C. July 21, 2022) ("Every inmate moving for compassionate release is expected to provide a release plan . . . .") (citing 28 C.F.R. § 571.61(a)(2)).

[9] As mentioned, by Order of November 6, 2024 (ECF 429), I directed the defense to submit defendant's updated medical records. *See* ECF 430, ECF 430-1.

In addition, the government argues that the unavailability of beds in a RRC does not constitute an extraordinary and compelling reason for compassionate release. ECF 428 at 7 (citing cases). According to the government, *id.* at 12: "This Court does not have the authority to transfer the Defendant to home confinement to serve the remainder of his sentence, as he has requested."

**B.**

Section 3624(c)(1) of 18 U.S.C. provides: "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." Subsection (g) outlines certain conditions that must be met before such a transfer may take place.[10]

Even assuming that defendant was not transferred to a RRC because of inadequate bed space, this would not constitute an extraordinary and compelling ground for compassionate release. The Policy Statement does not include the BOP's failure to place a defendant in a halfway house as an extraordinary and compelling circumstance. *See* U.S.S.G. § 1B1.13. And, several courts have rejected the contention advanced here. *See, e.g., United States v. Bryant*, No. 3:04-

---

[10] Both a RRC and home confinement are considered places of imprisonment. *See, e.g., United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (referring to home confinement as a "place of imprisonment"); *United States v. Evins*, No. 4:17-CR-01192-DCC-1, 2023 WL 6926018, at *4 (D.S.C. Oct. 18, 2023) (recognizing that placement at a RRC or home confinement qualifies as imprisonment); *Williams v. Birkholz*, No. 20-CV-2190 (ECT/LIB), 2021 WL 4155614, at *6, *6 n.6 (D. Minn. July 20, 2021), *report and recommendation adopted*, No. 20-CV-2190 (ECT/LIB), 2021 WL 4155013 (D. Minn. Sept. 13, 2021) (stating that "[h]ome confinement is considered a place of confinement or imprisonment" and that "[t]he Courts of this District and the Eighth Circuit Court of Appeals have consistently discussed home confinement, community confinement centers, and residential re-entry centers has [sic] places of confinement, incarceration, and imprisonment."); *United States v. McCoy*, No. 3:18-CR-232, 2021 WL 1226555, at *1 (W.D.N.C. Mar. 31, 2021) (suggesting that a RRC is a place of imprisonment).

CR-00047, 2024 WL 1070613, at *3 (W.D. Va. Mar. 12, 2024) ("In short, denial of halfway house time, whether actual or theoretical, cannot qualify as an 'extraordinary and compelling' circumstance for the purposes of 18 U.S.C. § 3582(c)(1)(A)(i) either alone or in combination with the other issues that Bryant offers in his Motion."); *United States v. Diamond*, 707 F. Supp. 3d 842, 845 (S.D. Iowa 2023) ("Because the Commission's policy statement does not include [the] BOP's failure to place a defendant in a halfway house or on home confinement as an 'extraordinary and compelling circumstance,' Diamond has not shown that there are 'extraordinary and compelling circumstances' warranting a sentencing reduction."); *United States v. Orton*, No. 1:12-CR-00117-JAW, 2023 WL 8812557, at *4 (D. Me. Dec. 20, 2023) ("The practical constraints on the availability of residential reentry center beds do not meet the 'extraordinary and compelling reasons' standard of § 3582(c)(1)(A). The BOP has indicated that a bed may be available in a residential reentry center as early as March 6, 2024, and a further delay of two and a half months does not constitute 'extraordinary and compelling reasons' for a sentence reduction."); *United States v. Koth*, No. CR 12-00199 JMS, 2022 WL 344297, at *3–4 (D. Haw. Feb. 4, 2022) (a defendant's lack of ability to serve time in a halfway house in the District of Hawaii due to the absence of such a facility or program is not an extraordinary and compelling reason for release); *United States v. Phillips*, No. CR 13-00021 SOM (04), 2021 WL 149675, at *3–4 (D. Haw. Jan. 15, 2021) (stating the same as *Koth*).

Defendant cites *United States v. Knapp*, CR-19-03-H-BMM, 2023 U.S. Dist. LEXIS 211545 (D. Mont. Nov. 28, 2023), to support his position. But, it does not compel a different result. In *Knapp*, the defendant argued that he was eligible for compassionate release because, *inter alia*, he was denied placement at a RRC due to the unavailability of a bed. *Id.* *2. But, at the time the court issued the opinion granting the defendant compassionate release, he had since

been placed at a RRC.  *Id.*  And, in that case, the government did not oppose the motion and the defendant only had "weeks or days" remaining on his sentence.  *Id.* at *1, *4.

The government is correct that it is the BOP, and not the Court, that has the authority to designate a prisoner's place of imprisonment.  ECF 428 at 12; *see* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ."); *see also United States v. Evins*, No. 4:17-CR-01192-DCC-1, 2023 WL 6926018, at *4 (D.S.C. Oct. 18, 2023) ("The BOP has the sole authority to designate the place of a prisoner's imprisonment . . ."); *Koth*, 2022 WL 344297, at *3 (stating that, pursuant to 18 U.S.C. 3621(b), "it is the BOP—not a federal court—that holds the authority to 'designate the place of the prisoner's imprisonment.'").  Therefore, this "Court lacks the authority to *order* the BOP to designate a particular place of imprisonment for a prisoner to serve his or her sentence."  *Evins*, 2023 WL 6926018, at *4 (citing cases) (emphasis in original).  A court's recommendation is merely a factor for the BOP to consider.  18 U.S.C. § 3621(b) (directing the BOP to consider "any statement by the court that imposed the sentence"); *id.* ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.  Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.").

Because the BOP has recommended defendant for a RRC, but allegedly lacks bed space to place defendant in a RRC, defendant asks, in the alternative, that he be permitted to serve the balance of his sentence on home detention.  *Id.* at 6–8.  Only the BOP has the authority to release a prisoner to home confinement.  *See* 18 U.S.C. § 3624(c)(2).  But, a court could achieve the same result by reducing a defendant's sentence to time-served and then imposing home confinement as

a condition of supervised release.  Section 3582(c)(1)(A) of 18 U.S.C states: "[T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or s*upervised release with or without conditions* that does not exceed the unserved portion of the original term of imprisonment) . . . ."  (Emphasis added).

The case of *United States v. Mujo*, No. 1:15-CR-00072-JDL-2, 2023 WL 334381, at *2 (D. Me. Jan. 20, 2023), is instructive.  There, the court stated, *id.* (internal citations omitted; emphasis in original): "[T]he district court may not order home confinement in the absence of a sentence reduction. . . . While the court may grant compassionate release to modify a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1), the Court may not order the remainder of an *unmodified* term of imprisonment to be served at home.  Because I have declined to reduce [the defendant]'s sentence, the Court is not authorized to order home confinement pursuant to 18 U.S.C. § 3582(c)(1)."

Similarly, in *United States v. Texeira-Nieves*, 23 F.4th 48, 58–59 (1st Cir. 2022), the First Circuit considered whether the district court correctly determined that it lacked the authority to order home confinement in the context of a motion for compassionate release.  *See id.* at 58.  The First Circuit concluded, *id.* at 59 (emphasis added): "[S]ection 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his *unmodified* sentence at home."  But, the court also recognized that "the district court could reduce a sentence to time served, impose a term of supervised release equal to the unserved portion of the term, and order home confinement as a condition of supervised release."  *Id.*

In sum, the Court lacks the authority to compel the BOP to transfer Horton to a RRC, or to compel the BOP to release him to home confinement.  But, the Court has the authority to reduce

defendant's sentence to time served, with home confinement as a condition of supervised release, *if the sentence reduction is warranted*.

Therefore, I turn to consider defendant's contention that a sentence reduction is warranted.

## C.

As noted, defendant relies, in part, on the arguments he advanced in the First Motion to establish an extraordinary and compelling reason for compassionate release.

In the First Motion, defendant maintained that FCI Beckley was "on lockdown status for the majority" of his incarceration there, and that these lockdowns exacerbated the mental health disorders from which he suffered. ECF 393 at 7–8. Relatedly, Horton argued that he could not participate in inmate programing because of the facility's constant lockdown status, which limited his ability to obtain First Step Act credits. *Id.* at 8. Further, defendant asserted that the food at FCI Beckley limited him from maintaining a healthy diet. *Id.* at 7.

Defendant is no longer serving his sentence at FCI Beckley, however. And, defendant does not make similar arguments regarding the conditions of his confinement at FCI Fairton.[11] In my view, these contentions are moot. *See Knapp*, 2023 U.S. Dist. LEXIS 211545, *2–3 (stating that poor living and food conditions, and lockdowns at one institution, although "serious, no longer support sentence reduction as [the defendant] is no longer placed" at that institution).

Horton also relies on the Court's prior finding of an extraordinary and compelling reason for release based on his medical conditions, including the risk of serious harm to defendant because of his obesity, combined with the COVID-19 pandemic. *See* ECF 404; ECF 420 at 4.

---

[11] Defendant attached an exhibit to the Second Motion which states that the unit in which he resides at FCI Fairton "will be placed on a 30-day commissary restriction" due to the "recent amount of high and intoxicated inmates . . . ." ECF 422-1. Plainly, a 30-day commissary restriction does not constitute an extraordinary and compelling reason for compassionate release.

U.S.S.G. § 1B1.13(b)(1) is titled "Medical Circumstances of the Defendant." Defendant does not identify any provision(s) that he claims apply to him. The provision states that an extraordinary and compelling reason for compassionate release exists if:

> **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

> **(B)** The defendant is--
> > **(i)** suffering from a serious physical or medical condition,
> > **(ii)** suffering from a serious functional or cognitive impairment, or
> > **(iii)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

> **(D)** The defendant presents the following circumstances--
> > **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> > **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> > **(iii)** such risk cannot be adequately mitigated in a timely manner.

Defendant does not argue, nor is there any indication, that he suffers from a serious functional or cognitive impairment. U.S.S.G. § 1B1.13(b)(1)(B)(ii). Similarly, there is no indication that defendant is suffering from a terminal illness or that he is experiencing deteriorating mental health because of the "aging process." U.S.S.G. § 1B1.13(b)(1)(A); U.S.S.G. § 1B1.13(b)(1)(B)(iii). The outbreak of infectious diseases, such as COVID-19, are addressed in U.S.S.G. § 1B1.13(b)(1)(D). In my prior Memorandum Opinion, I explained that defendant's

obesity placed him at a higher risk of serious illness if he were to contract COVID-19.  ECF 404 at 32; *see also People with Certain Medical Conditions and COVID-19 Risk Factors*, CTRS. FOR DISEASE CONTROL & PREVENTION (January 6, 2025), https://perma.cc/2JKV-BXJE.   As the government observes (ECF 428 at 6), defendant has failed to provide the Court with any medical records to establish that he remains obese.  In any event, defendant acknowledges that COVID-19 does not currently pose the severe risks previously associated with the illness.  ECF 420 at 3.

Initially, the only medical records before me were those filed in connection with the First Motion.  Those submissions contain no records with dates beyond 2022.  *See* ECF 429.  The updated medical records that defendant recently submitted pertain primarily to 2023, with two records from October 2024.  ECF 430-1 at 1, 47.  And, the most recent documents identifying Horton's weight or body mass index ("BMI") are over fourteen months old.  ECF 430-1 at 3 (indicating that Horton had a BMI of 40% as of November 1, 2023); *id.* at 13 (indicating that defendant weighed 294 pounds as of November 1, 2023); *id.* at 31 (indicating that defendant weighed 294 pounds on October 30, 2023).

Of course, one's weight can fluctuate.  I cannot conclude with certainty that defendant remains obese.  Nevertheless, I shall assume that defendant's obesity condition is unchanged.  Even so, defendant's obesity, by itself, does not warrant compassionate release under current public health circumstances.

As defendant recognizes, COVID-19 no longer poses the threat that existed at the outset of the global pandemic.  ECF 420 at 3.  On April 10, 2023, President Biden signed into law House Joint Resolution 7, "which terminate[d] the national emergency related to the COVID-19 pandemic."  Pub. L. No. 118-3, 137 Stat. 6 (2023).  Thus, there is no longer a federal public health emergency regarding COVID-19.  *See* U.S.S.G. § 1B1.13(b)(1)(D)(i)(II) (contemplating an

"ongoing public health emergency declared by the appropriate federal, state, or local authority . . .").  And, between October 9, 2024, and January 3, 2025, BOP data reflects that only one inmate at FCI Fairton tested positive for COVID-19.  *Compare Inmate COVID-19 Data*, BUREAU OF PRISONS, https://perma.cc/97BD-ASCZ (373 total COVID-19 cases at the facility as of October 9, 2024), *with Inmate COVID-19 Data*, BUREAU OF PRISONS, https://perma.cc/6S5T-6TFR (374 total COVID-19 cases at the facility as of January 3, 2025).

Given the lack of COVID-19 cases at FCI Fairton during the preceding three months, the facility is not currently "affected" by or at "imminent risk of being affected by" an "ongoing outbreak" of COVID-19.  U.S.S.G. § 1B1.13(b)(1)(D)(i); *see also United States v. Benjamin*, RDB-14-048, 2024 WL 4803412, at *5 n.2 (D. Md. Nov. 15, 2024) (finding that the defendant's obesity did not establish an extraordinary and compelling reason for compassionate release because he did not show that "there is a higher risk of him contracting COVID-19 in prison than . . . outside of prison");  *United States v. Deleon*, LKG-16-267, 2024 WL 4555724, at *9 (D. Md. Oct. 23, 2024) (no extraordinary and compelling ground for compassionate release based on obesity where "the Petitioner is at no greater risk from Covid-19 than other . . . members of the general public who have similar underlying health conditions.").

In the First Motion, obesity was not defendant's only ailment.  He also complained of seizures and a "large lump" growing on his neck that did not respond to antibiotics.  ECF 393 at 6, 7.  Horton stated, *id.* at 6–7: "Surgery on the neck area is the only option for removing the lump.  However, surgery will not take place leaving Gary Horton with the fear and stress of not knowing what is really wrong."  But, Horton's BOP medical records indicate that that issue of an "Epidermal Cyst of Posterior Neck" was resolved as of July 31, 2023.  ECF 430-1 at 49.  And, as of October 30, 2023, defendant's medical records indicate that he had not had a seizure for the "last 3 years."

*Id.* at 7; *see also id.* at 11 (same). Thus, these conditions do not constitute a basis for compassionate release.

In addition to physical health problems, defendant has a history of mental health problems. In 2022, prior to defendant's incarceration, he was diagnosed with adjustment disorder, anxiety, and PTSD. *See* ECF 393-2 (March 29, 2022, "Progress Note" signed by clinician which states that defendant has been diagnosed with these conditions); ECF 335, ¶ 60 (PSR stating that defendant reported that "he was recently diagnosed with [PTSD] and anxiety stemming from the Covid-19 pandemic and being in isolation."). On March 29, 2022, while defendant was still on release status, his clinician suggested that he "continue[] weekly sessions as an alternative to incarceration due to his reported and identified triggers which could have a negative impact on [Horton's] mental health and well-being . . . ." ECF 393-9.

Defendant's medical records reflect that he has suffered at least one panic attack while in BOP custody, and defendant suggests that there have been several more. ECF 400-7 at 1 (May 19, 2022, BOP Clinical Encounter Report, stating: "Inmate having an obvious panic upon arrival to his cell."); ECF 393 at 6 (First Motion arguing that, "[a]s time goes on, [defendant's anxiety] attacks become more frequent and more severe."); *see* ECF 400-8 at 3 (June 29, 2022, BOP clinical encounter assessment stating that defendant has anxiety). In a letter of August 20, 2022, from Horton's then-cellmate, the cellmate stated that, "[o]n several occasions," Horton woke him "up in the middle of the night to talk because of his anxiety." ECF 393-10.

But, Horton's more recent medical records indicate that his anxiety is in "remission." ECF 430-1 at 5, 19, 21, 23, 25, 27, 29, 38, 49. And, defendant stopped taking his prescribed mental health medication based on his perception that he is "essentially healthy and does not need to be medicated." *Id.* at 2. Moreover, a BOP Health Services "Clinical Encounter – Administrative

Note" of October 16, 2024, reflects that defendant was removed from the mental health clinical care classification. *Id.* at 1.

The Court must construe the words of the Sentencing Guidelines in accordance with their ordinary meaning. *See United States v. Boler*, 115 F.4th 316, 323 (4th Cir. 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021). Defendant has not demonstrated that his mental health conditions "substantially diminish[]" his ability "to provide self-care within the environment of a correctional facility" or that he is "not expected to recover" from them. U.S.S.G. § 1B1.13(b)(1)(B)(i); *see, e.g.*, *United States v. White*, No. 21-11270, 2022 WL 2297541, at *4 (11th Cir. June 27, 2022) (affirming the denial of a motion for compassionate release on the basis that there was "no evidence" to show that the defendant's PTSD "'substantially diminishes' his ability to care for himself in prison."); *United States v. Davis*, No. 11-20020-02-JWL, 2024 WL 4436600, at *2 (D. Kan. Oct. 7, 2024) (concluding that the defendant did not establish an extraordinary and compelling circumstance, although he suffered from anxiety, PTSD, and antisocial personality disorder, because, *inter alia*, "there is no showing that defendant is incapable of functioning or providing self-care as required by the policy statement."); *United States v. Duke*, No. 20-CR-01445-BAS-1, 2023 WL 4375652, at *3 (S.D. Cal. July 6, 2023) (concluding that the defendant did not establish an extraordinary and compelling reason for compassionate release based on anxiety disorder because, *inter alia*, the defendant did not "show that he is unable to provide self-care within the environment of a correctional facility."); *United States v. Baez-Paulino*, No. 8:19-CR-543-CEH-SPF, 2021 WL 5121862, at *3 (M.D. Fla. Nov. 4, 2021) (concluding that the defendant failed to demonstrate an extraordinary and compelling reason for compassionate release, although she suffered from depression, anxiety, and PTSD, because, among other things, the defendant did not "argue that she is unable to care for herself in the prison

environment."); *United States v. Francis*, No. 1:12-CR-00006, 2020 WL 6685559, at *1 (M.D. Tenn. Nov. 12, 2020) (finding no extraordinary and compelling reason for compassionate release, because "[i]t appears that [the defendant] can treat his anxiety disorder, depressive disorder, PTSD, and neuroses while in custody.").

Defendant also appears to argue that he is not receiving proper medical care. ECF 420 at 5 ("Horton is in need of medical care and can only receive that medical care upon the completion of his sentence on home confinement."); *id.* at 3 ("Needless to say that many of the medical issues remain untreated which can be addressed upon [Horton's] transfer to" a RRC); *id.* (stating that "the need for medical attention continues to be a major factor in the life of Gary Horton.").

U.S.S.G. § 1B1.13(b)(1)(C) provides that an extraordinary and compelling circumstance exists where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." On the record before me, however, I cannot conclude that the BOP has failed to provide defendant with necessary and adequate medical care.

When defendant reported to FCI Beckley on May 10, 2022, he "denied a need for Psychology Services." ECF 400-6 at 2 ("Bureau of Prisons Psychology Services Intake Screening" form). A different document, titled "Bureau of Prisons Health Services Health Screen," which is also dated May 10, 2022, states, ECF 400-5 at 5: "Inmate offered mental health medication: SSRI or SNRI. Inmate declines as he feels like he does not need anything at the moment." And, when defendant had a panic attack on May 19, 2022, medical providers came to his cell and helped calm him down. ECF 400-7 at 1. Then, defendant was prescribed two medications, Mirtazapine and "FLUoxetine HCl", for his anxiety disorder. *Id.* Thereafter, on June 29, 2022, defendant was provided with a higher dosage of FLUoxetine HCl (20 mg to 40 mg),

after defendant advised medical staff that his medication was not as "effective" as he had hoped. ECF 400-8 at 1, 3.

Defendant was transferred to FCI Fairton on October 30, 2023. ECF 430-1 at 2. Upon transfer to FCI Fairton, defendant made no mental health complaints. ECF 430-1 at 8. And, defendant's FLUoxetine HCl prescription was discontinued at that time because he "refused" to take it. *Id.* at 9. Similarly, on or around October 30, 2023, defendant's Mirtazapine prescription was discontinued because he was "non-compliant." *Id.* at 5, 45.[12]

Then, on November 1, 2023, defendant underwent a "Preventive Health Visit." *Id.* at 2. A "Clinical Encounter" note for that visit states, in part, *id.*: "Though [patient] has been transferred on [mental health] medication, he candidly admits he has been noncompliant due to [patient] perception that he is essentially healthy and does not need to be medicated." That same note indicates that Horton denied "any recent trauma." *Id.*

Aside from vague, conclusory assertions, defendant does not explain what medical care he believes he requires that has not been provided by the BOP at FCI Fairton. *See, e.g.*, ECF 420 at 3 ("Needless to say that many of the medical issues remain untreated which can be addressed upon [Horton's] transfer to" a RRC). In sum, there is no evidence that the BOP has failed to provide defendant with necessary medical care.

For all of these reasons, I conclude that defendant has not established an extraordinary and compelling reason for compassionate release.

---

[12] A BOP Health Services "Clinical Encounter – Administrative Note," dated October 16, 2024, indicates that defendant's Mirtazapine prescription was discontinued on October 31, *2024*. ECF 430-1 at 1. That appears to be a typographical error.

**D.**

I shall assume, *arguendo*, that Horton has demonstrated an extraordinary and compelling reason for compassionate release. I must then consider the sentencing factors in 18 U.S.C. § 3553(a). These factors counsel against granting Horton the relief he seeks.

In denying the First Motion, I concluded, ECF 404 at 35: "[A] balancing of the § 3553(a) factors readily indicates that defendant's release from prison is not warranted at this time." Defendant contends that the situation is "quite different today" and that "numerous factors to be considered under 18 U.S.C. § 3553(a) have changed since this Court denied relief in May 2023." ECF 420 at 4, 8. Primarily, Horton argues that because case management and the BOP have determined that he should move to a RRC, they have "determined that the public would be safe from repetitions of crimes by" him. *Id.* at 4; *see also id.* at 6. Similarly, he asserts, *id.* at 5: "Home confinement is an available sentence and basically recommended." Defendant also contends that his "outstanding record" in BOP custody must be considered. *Id.* at 7.

The government argues that defendant's "81-month sentence remains necessary to reflect the seriousness of the offense, to address the history and characteristics of the Defendant, to promote respect for the law, and to provide adequate deterrence." ECF 428 at 9. It posits, *id.* at 10: "Defendant's record reflects a pattern of involvement in drug distribution and in complex criminal conspiracies. This weighs strongly against compassionate release." Moreover, the government urges the Court not to reduce defendant's 81-month sentence, claiming "it is necessary to specifically deter the Defendant from committing crimes in the future." *Id.*

As I explained in my prior Memorandum Opinion: "There is no doubt that defendant's crime was serious." ECF 404 at 35. He played a significant role in an extensive drug conspiracy, involving "approximately 1,677 grams of cocaine, approximately 31 grams of heroin, and

approximately 2,321 grams of [m]arijuana." ECF 303 at 11. And, as the Court noted at sentencing, defendant also illegally possessed "not just one weapon, but a cache of them." ECF 386 at 28–29. Further, the Court observed that "drugs and guns and weapons are a very dangerous combination" and that "[p]eople have them so that they can use them." *Id.* at 29. For these reasons, I agree with the government that the "nature and circumstances of the Defendant's crime are extremely serious, and his conduct presented an incredible risk to the public." ECF 428 at 9; *see United States v. Blackwell*, JKB-10-493, 2020 WL 833571, at *2 (D. Md. Feb. 19, 2020) ("There is no serious dispute that the illegal drug business brings with it violence, often lethal and on a large scale. The Court finds and concludes that those who participate in and profit from large scale, illegal drug trafficking activities are engaging in conduct that at least indirectly leads to widespread violence.").

Moreover, as discussed, defendant's criminal history is significant, and dates to the age of sixteen. ECF 335 ¶¶, 30, 32–36, 38. The criminal justice system was lenient with defendant. *See*, *e.g.*, *id.* ¶ 34 (defendant was convicted of possession with intent to distribute cocaine and received a fifteen-year sentence, with ten years suspended and three years of probation). Yet, while incarcerated, defendant stabbed another inmate. *Id.* ¶ 35. Between August 4, 2005, and June 6, 2012, defendant served approximately 82 months of incarceration for the offenses of possession with intent to distribute cocaine and second-degree assault. *Id.* ¶¶ 34, 35. Still, defendant was not deterred. Approximately one year after defendant's release, defendant was convicted in federal court of racketeering conspiracy, related to narcotic trafficking. *Id.* ¶ 36. This included facilitating the smuggling of heroin, marijuana, cocaine, Suboxone, and Percocet into a Maryland jail. *Id.* Defendant was sentenced to 36 months of incarceration and five years of supervised release. *Id.* Twice defendant violated his supervised release. VOSR Case, ECF 865, ECF 1022.

Specifically, while the case was assigned to Judge Bennett, defendant violated the statutory conditions of his release when he committed the crimes of first- and second-degree assault and domestic violence. *Id.*, ECF 847 (Petition on Supervised Release). Judge Bennett sentenced defendant to eighteen months of incarceration as a result. *Id.*, ECF 865. Defendant again violated his supervised release when he engaged in the criminal activity that culminated in his prosecution in the instant case. *Id.*, ECF 1022. The PSR also reflects that, while on supervised release, defendant tested positive for marijuana and cocaine "several times[]" and failed to attend counseling and health assessment sessions. ECF 335, ¶ 65; *see* VOSR Case, ECF 911 (Report on Offender Under Supervision). According to the PSR, ECF 335, ¶ 65: " . . . the defendant's adjustment to supervision is deemed as poor. The defendant failed to comply with supervised release conditions and continued criminal activity while on supervised release." That said, to defendant's credit, he remained on federal release status from April 2021 to May 2022, without a revocation. ECF 336 (defendant received credit for time served from November 15, 2018, to April 12, 2021); ECF 383 (defendant reported for his sentence on May 10, 2022).

Defendant also complains of sentencing disparities between him and his codefendants. ECF 420 at 5. This argument is not compelling. Indeed, the Court addressed a similar argument at sentencing with respect to another codefendant. I noted that that codefendant had "a somewhat lower offense level and definitely a better criminal history category." ECF 386 at 28. And, at least one codefendant received a 144-month sentence, which is significantly longer than the sentence Horton received. ECF 157 (Judgment). The Fourth Circuit has said that "a sentence is not 'unreasonable merely because it creates a disparity with a co-defendant's sentence.'" *United States v. Gillespie*, 27 F.4th 934, 945 (4th Cir. 2022) (quoting *United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007), *vacated on other grounds*, 552 U.S. 1089 (2008)); *see also, e.g., United States*

*v. Ball*, No. 19-4851, 2022 WL 861823, at *2 (4th Cir. Mar. 23, 2022) (sentence disparity between codefendants not unreasonable when adequately justified).  And, Horton overlooks that he entered a C Plea in which the parties agreed to a total sentence ranging between 60 and 84 months of imprisonment as the appropriate disposition.  ECF 303, ¶ 10.  He received a sentence of 81 months, ECF 336, which was below the top end of the C Plea range and well below the bottom of the Guidelines range of 100 to 125 months.  ECF 335, ¶ 76.

To be sure, rehabilitation efforts after sentencing must be considered in regard to a motion for compassionate release.  *See United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct; *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

In other words, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments."  *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 334 n.3.  The court must "at least weigh the [defendant's] conduct in the years since the initial sentencing."  *McDonald*, 986 F.3d at 412; *see Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).  Courts place significant weight on a

defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).

A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). However, rehabilitation alone does not warrant a defendant's immediate release. *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

Defendant's post-sentencing conduct weighs in his favor. He has completed fifteen educational courses while in BOP custody, ECF 420-4, ECF 420-5, and, to the Court's knowledge, he has not incurred any disciplinary infractions. Nonetheless, these achievements, although laudable, are not sufficient to warrant compassionate release.

I am also mindful that defendant was incarcerated during the global pandemic, which increased the severity of his sentence. *See United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary"). Nevertheless, the C Plea was tendered during the COVID-19 pandemic. Although the Court was not privy to the parties' plea discussions, the parties were well aware of the COVID-19 pandemic, and it seems likely that they would have taken it into account in reaching the agreed upon sentence, which was well below the Guidelines.

As I see it, defendant received a lenient sentence of 81 months of incarceration, which was below the top end of the C Plea range and well below the bottom of the Guidelines range of 100

months to 125 months.  ECF 303, ¶ 10; ECF 335, ¶ 76.  A reduction of defendant's sentence would not promote respect for the law.

## IV.  Conclusion

For the reasons stated, I shall deny defendant's Motion (ECF 420), without prejudice.  An Order follows, consistent with this Memorandum Opinion.


Date: January 17, 2025                              _____/s/_____

Ellen Lipton Hollander
United States District Judge